**Jack T. HATCHER, Appellant,**

v.

**John MULLINS et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 7, 1956.

---

Jack T. Page, Pikeville, for appellant.

Francis Dale Burke, Blaine H. Rutherford, Pikeville, for appellee.

CULLEN, Commissioner.

Around 3:30 a. m. on July 6, 1952, in Pikeville, an industrial building owned by Jack T. Hatcher and an adjoining dwelling of John and Mellie Mullins were discovered to be on fire. The industrial building burned to the ground and the dwelling and its contents were substantially destroyed. The Mullinses sued Hatcher for damages, on the theory that Hatcher had kept and maintained his premises in such a negligent condition as to permit live coals to escape from a furnace and fall among inflammable materials kept near the furnace, thus starting a fire which spread to and destroyed the Mullinses' home. Upon a jury verdict, judgment was entered for the Mullinses in the amount of $2,700. Hatcher has appealed, maintaining that he was entitled to a directed verdict because there was no proof that the fire actually resulted from the alleged negligent condition of his premises. Hatcher also contends there was no proof of negligence.

Hatcher operated a soft drink bottling plant in his building, which consisted of two stories above a basement, the floor of which was only a few feet below ground level. It was a frame building some 40 years old, covered with metal sheeting. The main floor was used for the bottling and business operations, and the second floor as a syrup room. In the basement, at the end of the building nearest the Mullins house, was a coal-fired boiler used to heat water for sterilization of bottles. The Mullins house was around three feet from the end of the building.

The furnace rested on a concrete slab, but the rest of the basement floor was dirt or clay. The evidence for the plaintiffs was that there were cardboard boxes, bottle crates, wood chips, and other litter in the basement; there was an ash can near a partly wooden wall; the door frame of the furnace was fastened on by a wire running around the furnace, in such a way that there was an open hole above and below the door, through which one looking through the basement window could see the fire burning in the furnace; on occasions the plaintiffs' daughter, coming home at

night, had seen live coals on the floor near the furnace; at 9:00 p. m. on the night before the fire the daughter had observed a fire burning in the furnace.

The evidence for the defendant, in addition to denying that there was any debris or inflammable material in the basement, and that there was a hole in or around the furnace door, tended to show that there could have been no substantial fire burning in the furnace on the night in question. The method of operation was to fire the furnace lightly at intervals of 15 or 20 minutes during the day, while the bottling machinery was in operation. On the day in question the machinery was shut down at 4:30 p. m., and coal had last been put on the fire some 15 or 20 minutes before that. The manager, who had remained at the plant to check in some truck drivers, left around 8:30 p. m., and immediately before doing so he looked in the basement and saw no evidence of fire or smoke. A local business man who had passed by the plant on the night in question, around 10:00 or 10:30, saw no light in the building or any appearance of a fire.

We will assume for the purposes of this opinion that the evidence was sufficient to warrant a finding that the defendant negligently maintained his premises. However, the difficulty arises as concerns proof that this negligent condition caused the fire.

As concerns the question of whether the fire *could* have been caused by the negligent condition in the defendant's basement, the evidence for the plaintiff shows only that there was sufficient fire in the furnace at 9:00 p. m. to be observable by the plaintiffs' daughter. Opposed is the fact that the buildings did not catch fire until some 11 hours after the furnace was last fired, and the testimony of the business man that at 10:30 p. m. there was no sign of fire or light in the defendant's building.

As concerns the question of whether the negligent condition actually *did* cause the fire, there is only the testimony of Mr. Mullins that when he left his home after

the buildings were discovered to be on fire, the "greatest concentration" of fire was "in the end (of the bottling plant) next to my house, about where the boiler room was," and the testimony of the fire chief that when he arrived at the scene "the worst, in fact, the heavy fire was in the vicinity of the furnace room."

We have, then, evidence of a condition that might possibly cause a fire, and evidence that after the fire was discovered, its greatest concentration was in the vicinity or area in which the hazardous condition existed. It is our opinion that this is not sufficient to establish causation.

In The Rural Natural Gas Co. v. Arvin, Ky., 270 S.W.2d 610, 613, where it was claimed that a dwelling caught fire as a result of a defect in the cylinders of a bottle gas system, we said, "The mere fact that the fire was localized, at the outset, in the wall between the stove and the gas supply system is not satisfactory proof that the fire was caused by escaping gas."

In Smith v. Kentucky-West Virginia Power Co., Ky., 283 S.W.2d 376, 378, where the alleged cause of the fire was a defective electric meter and conduit, we said:

"As far as this record shows, the fire could have started in any one of many different ways. Fires and their origin are of a mysterious character and it is not within the province of a jury or court to speculate as to their beginnings. *The mere fact that the fire damage was greater in the vicinity of the meter board and conduit does not furnish the basis for a finding of fact that the fire originated in the conduit.* A verdict against the defendant would necessarily be based upon conjecture and speculation. We consistently have held that liability cannot rest on such a basis. * * *". (Our emphasis.)

In McAtee v. Holland Furnace Co., Ky., 252 S.W.2d 427, 429, where a dwelling caught fire about six weeks after a new furnace was installed, and there was some

evidence that the fire began around the chimney flue, we said:

"* * * It seems to have been the type of fire that no one can state with any degree of certainty its cause. It is common knowledge that many fires are mysterious and their origin cannot be determined.

In Kays v. Fisher, Ky., 250 S.W.2d 329, where a store building caught on fire early in the morning of the day following installation of a new furnace, we said:

"* * * Based upon the evidence here, a jury could have only guessed as to the cause or origin of the fire, that is, whether from defective installation of the furnace, defective wiring in the old building, lack of merchantable quality and reasonable fitness of the furnace or from other possible causes. * * *"

The appellees rely upon Louisville & Nashville R. Co. v. Howe, Ky., 243 S.W.2d 905. However that case is not controlling because there the circumstantial evidence pointed unerringly to the cause of the fire. There was an open fire burning fiercely along the railroad right of way, within 210 feet of the plaintiff's barn, there was a strong wind blowing toward the barn and there was no other probable source from which the barn could have caught fire. In the case before us, the probability that the fire originated from the hazardous condition of the basement is no greater than that it began from any number of possible sources within the range of human experience.

The appellees also rely upon cases annotated in 42 A.L.R. 793, 111 A.L.R. 110,

and 18 A.L.R.2d 1071, in which it was held that a person who permits an accumulation of inflammable materials on his premises is liable for damages caused by a fire which begins therein and spreads to the property of other persons, although he had no connection with the origin of the fire. This may be considered a sound rule, but there is an absence of proof in the instant case that the fire actually did originate in the inflammable materials in the appellant's basement.

As we view the plaintiffs' evidence in this case, it established only a bare possibility that the fire in the defendant's furnace could have set fire to the buildings. This is not a sufficient basis to support the inference, drawn from the fact that the fire when discovered was heaviest near the furnace room, that the furnace did set fire to the buildings.

Because of the insufficiency of proof that the negligent condition of the appellant's basement caused the fire, it is our opinion that his motion for a directed verdict should have been sustained.

An appropriate motion for judgment notwithstanding the verdict was made. Accordingly, the judgment is reversed with directions to enter judgment for the defendant.

HOGG, J., not sitting.

MILLIKEN, J., dissents, being of the opinion that the plaintiffs' evidence was sufficient to require submission of the case to the jury.