**KENTUCKY POWER COMPANY (Formerly Kentucky & West Virginia Power Co., Inc.), Appellant,**

v.

**Ada HOWARD et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 7, 1956.

Willis W. Reeves, Hazard, Clifford E. Smith, Elmer G. Davis, Jr., Smith, Reed & Leary, Frankfort, for appellant.

W. M. Melton, Hazard, Bert T. Combs, C. Kilmer Combs, Prestonsburg, for appellees.

CULLEN, Commissioner.

Upon a jury verdict, Ada and Burley Howard recovered judgment against the Kentucky Power Company, in the amount of $6,000, for destruction by fire of the Howards' dwelling house and contents and damage to their outbuildings and trees. Appealing, the power company maintains it was entitled to a directed verdict, on the ground there was insufficient proof of negligence and causation.

Three service wires ran from a power company pole about 50 yards to the west gable of the Howard house, where they were attached to insulator knobs, about eight inches apart, screwed into the outside wall of the house. To each of the service wires there was attached a "drop" wire. The three drop wires ran inside a cable along the outside wall and around a corner to a meter attached to the south wall of the house.

On March 1, 1954, there was a terrific snow and sleet storm in the community, which caused considerable damage to the power company's system, and disrupted service. During the storm there was a dislocation of the insulators at the Howard house. The evidence as to the exact nature of the dislocation is not clear. However, it appears that one of the insulators had pulled completely loose from the wall and was "dangling," and the clapboard in which the other insulators still were screwed had been bowed out so as to leave an open space or crack. There is some suggestion in the

testimony that *two* of the insulators had pulled completely loose, but this is not clear.

On March 7, the power company's service crew, which had been engaged in restoring service after the storm, reached the Howard house. Mr. Howard pointed out to them the dislocation of the insulators, expressed his fear that the situation was dangerous, and asked the crew to fix the insulators before restoring the current, which had been off since the storm on March 1. The crew foreman declined at that time to replace the insulators, expressing the opinion that there was no danger, and he caused the current to be restored to the Howard house. On March 9, around 6:30 p. m. the house caught fire and was burned to the ground.

The Howard house was a one-story frame dwelling in the shape of an "L," with a living room on the west, a bedroom on the east, and a kitchen behind the bedroom on the south. As previously stated, the insulators were attached to the west end. There was a chimney in the center of the house, between the living room and the bedroom, with a fireplace opening into each of these rooms. On the night in question, the Howards had a coal grate fire in the living room fireplace. Shortly before the house was discovered to be on fire, Mrs. Howard had complained of the heat in the room, and Mr. Howard had thrown some ashes on the grate.

Around 6:30 p. m., a 15-year-old granddaughter who lived with the Howards went into the bedroom and saw smoke. She yelled "fire" and ran outside to the well, which was west of the house. There she saw flames coming from the gable window at the west end of the house, some three feet above and to the left of the insulators. She also saw smoke coming from the open crack behind the board to which the insulators were attached. In the meantime Mr. Howard had run into the kitchen, and discovered that the south wall of the kitchen was on fire. He ran outside to the well, for water, and did not then see fire at any other place. Neighbors, who arrived shortly, saw a concentration of flames at the west end of the house, but also observed that the entire roof was on fire, and in a very short time the house burned to the ground.

The theory of the Howards is that the bare ends of the service wires came together, by reason of the insulators hanging loose, and caused a spark which set fire to dry leaves in the crack behind the board that had bowed out. Electrical engineers for the power company testified that if by some chance the wires had touched at their only uninsulated points, which were where the service wires were cut off after being wrapped around the insulators, the resulting spark could have extended not more than a quarter of an inch, and would have lasted only a small fraction of a second before blowing the fuses in the transformer. A practical electrician who testified for the Howards said that if the bare wires came together "it would create a spark and anything near it would catch fire." This statement that the spark would set fire to anything "near it" is the only evidence opposing the testimony of the company's engineers that the wires, coming together at least a foot away from the house, could not have set fire to the house.

Assuming, but not deciding, that there was sufficient evidence to establish *negligence* on the part of the power company, it is our opinion that the evidence does not warrant a conclusion that the fire resulted from such negligence. In the first place, the evidence that the wires *could* have caused the fire is exceedingly weak. And in the second place, there is nothing more than conjecture to support the belief that the wires *did* cause the fire. There was no evidence that the fire was first discovered burning immediately around the wires or insulators. On the contrary, the granddaughter observed flames coming from the gable window, several feet above and to the left of the insulators. Obviously, at that time the fire was well along, because there was smoke in the bedroom and the

south wall of the kitchen was burning. There was another possible cause of the fire, since the Howards had a strong coal fire burning in the grate, from which the chimney flue extended up through the center of the house. Also, there previously had been a fire in the kitchen stove.

Perhaps if there had been strong evidence that the wires *could* have caused the fire, there would be some basis for an inference that they *did* cause it. However, the evidence here requires one speculation to be based upon another.

The judgment is reversed, with directions to set it aside and to enter judgment for the defendant in accordance with its motion for judgment notwithstanding the verdict.

HOGG, J., not sitting.