**J. A. DARLINGTON et al., Appellants,**

v.

**OWEN COUNTY RURAL ELECTRIC CO-OPERATIVE CORPORATION,**
**Appellee.**

Court of Appeals of Kentucky.

Dec. 7, 1956.

Rehearing Denied March 29, 1957.

Benton, Benton, Luedeke & Rhoads, Newport, Wm. P. McEvoy, Burlington, for appellants.

Vest & Vest, Walton, Stoll, Keenon & Park, Lexington, for appellee.

SIMS, Judge.

The parties to this appeal will be referred to as they appeared in the trial

court, plaintiffs and defendant. The petition avers defendant by the negligent installation and operation of its electric meter and wires caused a house and its contents owned by plaintiffs to be destroyed by fire, for which they sought to recover $20,125 compensatory damages, and $20,000 punitive damages by reason of defendant's wanton negligence.

At the conclusion of plaintiffs' evidence the court directed a verdict for defendant and this appeal followed.

The home of plaintiffs, Jesse Darlington and wife, was located on a farm in Boone County owned by his parents, plaintiffs, J. A. Darlington and wife. On the morning of October 9, 1954, while Jesse Darlington and his wife were visiting away from home, this frame house burned and it and all contents were completely destroyed.

Marvin Darlington, a brother of J. A. Darlington, was the first person to arrive at the scene of the fire. He saw a cloud of smoke and reached the house in about five minutes thereafter. He testified that when he got there the whole front wall, about four feet of the side wall, about half of the roof and part of the left wall, as well as part of the back of the house, were burning. He did not observe the meter when he first arrived, but 15 or 20 minutes later noticed "it was laying on the side there, on the outside of the house." Richard Mulligan, another neighbor, testified that when he got to the fire, Marvin was already there, the whole building was on fire and the electric wires were lying on the ground burning.

It is admitted the electric meter was on the right side of the house, 3 or 4 feet from the front corner, and the fuse box was inside the house directly back of the meter. There was testimony the meter had been running fast, making a buzzing sound and plaintiff Jesse Darlington had complained to defendant about this. One of defendant's employees told him the trouble was beyond the meter and in the wiring in the house, but Jesse never attempted to find out what was wrong with his own wir-

ing. However, Jesse did remove the fuses and noticed the meter still ran. His wife testified that when the meter was replaced after a storm it was left hanging by one clamp.

E. S. Bentley, an electrical inspector for the Union Light and Power Company, whose duties required him to inspect new electrical installations to see that they met the requirements of the National Electric Code, and who had much experience in examining burned buildings to discover the cause of their fires, went to the Darlington house after it burned and examined the meter and found "there was a short circuit in this meter." He reached this conclusion because certain metal in the meter had melted and he testified that had the heat of the burning house caused this metal to melt, then such intense heat from the fire would have completely burned up the fuse box. Bentley was then asked what in his opinion caused the house to burn. An objection was sustained to the question and he made an avowal to the effect that in his opinion the defective meter and meter connection caused the fire.

■ Clearly the trial court was correct in excluding this "opinion testimony" of Bentley, as it was the very question the jury would have been called upon to decide had the case reached it. It would have been competent to ask the witness if in his opinion the defect he found in the meter could have caused the fire, but not that it did cause the fire. Aetna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S.W. 523; Madison Coal Corp. v. Altmire, 215 Ky. 283, 284 S.W. 1068.

Robert J. Porter, the electrician who wired this house, testified that sometimes a meter "crawled" when no current was flowing through it; this fact and the further fact that a meter "hummed" did not make it dangerous. Furthermore, he testified there might be a partial ground with some current leaking through the meter, but that would not cause a fire. It was Porter's opinion the heat from the burning

house caused the meter to "short" or that it "shorted" when it fell on the ground while the house was burning.

It was conceded that as electricity is known to be dangerous, defendant is charged with the highest degree of care in leading it into plaintiffs' residence. Therefore, we will not take time to discuss plaintiffs' authorities on this point. Nor will we discuss the several cases they cite in support of their argument that there was sufficient evidence to take the case to the jury. It will suffice to say the facts in the instant case distinguish it from those relied upon by plaintiffs.

From this record it is impossible to tell where this fire started or what caused it. True, it was burning intensely on the wall next to the meter when Marvin Darlington arrived on the scene, but he testified that when he got there the whole front wall, parts of the side walls, half of the roof and part of the back of the house were all burning. The evidence shows the short circuit in the meter could have been caused by the heat from the burning house, or by the meter falling to the ground when the wall burned to which it was attached; or as plaintiffs claim, it could have been caused by a defect in the meter. Thus a jury would have had to speculate whether the fire was caused by the meter or whether it resulted from some other cause. A verdict against defendant would have had to be founded upon speculation and conjecture, and we have consistently written liability cannot rest thereon. Smith v. Kentucky-West Virginia Power Co., Ky., 283 S.W.2d 376, and the authorities therein cited.

The facts in this case are quite similar to those in the Smith case just cited, where we held the evidence was not sufficient to take the case to the jury. It is common knowledge that many fires are mysterious and their origin cannot be determined. Here, the evidence as to the cause of the fire is equally consistent with no negligence as it is with negligence, therefore it was the duty of the trial judge to direct a verdict in favor of defendant. McAtee v. Holland Furnace Co., Ky., 252 S.W.2d 427. Also see Hatcher v. Mullins, Ky., 296 S.W.2d 456 and Kentucky Power Co. v. Howard, Ky., 296 S.W.2d 463.

The judgment is affirmed.

HOGG and CAMMACK, JJ., not sitting.