## Harlan Water Company v. Carter.

(Decided June 10, 1927.)

### Appeal from Harlan Circuit Court.

1. Waters and Water Courses.—Where water company contracts with city to furnish sufficient water to protect property therein against fire, a citizen may sue for damages sustained by him because of company's failure to perform contract.

2. Waters and Water Courses.—Water company held not relieved from liability for failure to supply sufficient pressure to enable fire department to extinguish fire on ground that failure of water to flow through hydrants was caused by freezing, which was act of God, in view of evidence that type used would have drained itself, as required by contract with city, under similar conditions, if properly installed and maintained.

3. Waters and Water Courses.—In action against water company for damages for failure to supply sufficient pressure to enable fire department to extinguish fire, instruction to find for plaintiff, if fire could have been extinguished before his property was damaged but for water company's failure to furnish quantity and pressure of water reasonably sufficient for fire protection when applied through fire hydrants provided for in its contract with city, held warranted by evidence, and not confusing.

4. Waters and Water Courses.—Instruction to find for plaintiff, in action against water company, if plaintiff's building was destroyed

by fire because water could not be thrown thereon in consequence of frozen hydrants or mains, due to defendant's careless failure to bury mains sufficiently deep or install hydrants so as to be self-draining, held warranted by evidence, and not confusing.

5. Trial.—Refusal of instruction, in action for damage caused by water company's failure to supply sufficient pressure to extinguish fire, that frozen condition of hydrants was result of act of God, relieving defendant from liability, if caused by extremely cold weather without defendant's fault, held not prejudicial to defendant, in view of instruction requiring finding that such condition was due to defendant's negligence before finding for plaintiff.

6. Appeal and Error.—Admission of incompetent evidence as to value of building destroyed by fire by witnesses, basing opinion on cost of replacement without showing their familiarity with size or character of construction of building, held not prejudicial error, where other witnesses familiar with building testified as to value, jury fixed value at lowest estimate, and appellant introduced no evidence of value.

SAMPSON & SAMPSON for appellant.

J. S. FORESTER, J. B. CARTER and LEE & SNYDER for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

A brick building owned by the appellee, J. B. Carter, who was the plaintiff below, was destroyed by fire on December 28, 1925, and, alleging that the value of the building was $10,000, the plaintiff brought this action against the Harlan Water Company to recover that sum on the ground that the defendant's failure to supply a sufficient pressure of water to enable the city fire department to extinguish the fire was the proximate cause of the loss. By an amended petition it was alleged that, in addition to the fact that no water was in the reservoir, the defendant had installed its hydrants in such a negligent manner, or had permitted them to become so out of repair, that by reason of their defective condition they were not self-draining, and the water therein froze and the fire department could not use them to extinguish the fire.

The proof tended to show that the building was worth from $8,000 to $10,000 and it developed that plaintiff had collected insurance in the amount of $5,000 on the building. The jury, in its verdict, found that the value of the building at the time of the fire was $8,000, and, as instructed by the court, credited that amount with

the amount of insurance that had been collected, and found against the defendant in the sum of $3,000.

The Harlan Water Company supplied water to the city of Harlan under a written contract the portions of which, material to this controversy, are as follows:

(2) "The said water plant, when completed and installed ready for use, shall have the pressure and supply sufficient for a population of six thousand inhabitants."

(3) "All of the mains which convey the water shall be buried or placed of sufficient depth below the surface of the ground that none of them will be affected or injured in any way by frost or freezing, and, when necessary in the process of construction to cross any stream of water about Harlan, said mains or water pipes shall be laid below the ordinary bottom of the stream, a sufficient depth, and so encased in concrete of a sufficient thickness and strength to protect them from floods or other injuries or misfortune."

(4) "The said city council, party of the first part, subscribes to and agrees to pay for forty-five hydrants to be used for protection against fire, at $40 each per year for a period of ten years from this date. Said hydrants shall be two-faced and self-draining. The payments for said hydrants shall be made quarterly."

When the contract was renewed in 1924, the amount to be paid by the city for fire hydrants was increased from $40 each per year to $55 per year.

At about 11 o'clock on the night of December 27, 1925, a fire occurred in a building adjoining the building of the plaintiff. The city fire department arrived within a reasonable time and attached the hose to two hydrants, one about 50 feet and one about 100 feet from plaintiff's property. When the hose was first attached, there was no water in the mains, and, before the water was turned on and pressure secured, the fire had gained such headway that the building adjoining the one owned by appellee was practically destroyed, but the fire was finally gotten under control without any damage having been done to plaintiff's property, and members of the fire department, thinking the fire was out, turned the water off at the two hydrants, and left. About 6 o'clock

the next morning it was discovered that this fire was still burning. The fire department responded within a reasonable time with their hose and equipment, but, when they attached their hose to the two hydrants that had been opened the night before, they found the water in the hydrants or mains had frozen and would not flow through the hose. They then went to a third hydrant located at the corner of Main and Clover streets, which had not been used the night before, and found the water in this hydrant frozen. These were the only hydrants to which the hose could be attached and reach appellee's building and, being unable to secure any water through any of these hydrants, the fire department could do nothing toward putting out the fire and the building was destroyed.

The rule, although contrary to the holding of the great majority of courts, has been announced in a number of decisions by this court that, where a water company has contracted with a city to furnish a supply of water sufficient for the protection of property within the city against fire, a citizen may sue to recover damages sustained by him on account of the failure of the water company to perform its contract. The Paducah Lumber Company v. Paducah Water Supply Company, 89 Ky. 340, 12 S. W. 554, 13 S. W. 249, 11 Ky. Law Rep. 738, 7 L. R. A. 77, 25 Am. St. Rep. 536; Mountain Water Company v. Davis, 195 Ky. 195, 241 S. W. 801.

It is clearly established that the city had an amply equipped and competent fire department, and that the department responded promptly when the alarm was given, and that, when they arrived on the scene, the fire had made little headway, and, if water had been obtainable, the fire could have been easily extinguished.

It is earnestly insisted by appellant that the failure of the water to flow through its hydrants was not caused by any fault or neglect on its part, but by the freezing of the hydrants which was caused by an act of God. The weather was very cold when the fire occurred, the temperature being near zero, but there is no proof that this condition was unusual, or that, if appellant's mains and hydrants had been properly installed and maintained water therein would freeze under such conditions. There was proof tending to show that, if coarse gravel, broken stone, or cinders in sufficient quantity had been placed at the base of the fire hydrants, an outlet would have

been formed for the water which would drain through the vent holes in the hydrants, and that it would drain with sufficient rapidity to prevent freezing. It is conceded that the type of fire plug used by appellant was the approved and standard type and the proof tended to show that such a fire plug would have drained itself without freezing under conditions similar to those existing at the time the fire occurred, if properly installed and maintained. Not only was the water frozen in the two hydrants that had been used at the first fire, but the one at the corner of Main and Clover streets, which had not been used, was frozen and could not be used at the time the second fire occurred. This would indicate that it had not been so installed or maintained as to be self-draining, as required by the contract between the city and the water company. It is shown that, if this hydrant had been in working condition at the time of the fire, the fire department could have used it, as they had sufficient hose to extend from it to appellee's building.

The appellant also complains of the instructions, but they substantially conform to those that have been approved by this court in similar cases. In instruction No. 2 the court, in substance, told the jury that it was the duty of the water company, under its contract with the city of Harlan, to maintain in its water mains such quantity and pressure of water as would be reasonably sufficient for fire protection when applied through the fire hydrants provided for in the contract, and that, if they believed from the evidence that at the time of the fire it failed to maintain in its water pipes such quantity and pressure of water as would be reasonably sufficient for fire protection, and, by reason of such failure, if such failure there was, the building in question was burned; and should further believe that at the time of the fire the city of Harlan had provided a fire department with the necessary and sufficient equipment with which to fight fire, and that the fire department arrived at the place of the fire, and attached the hose to the hydrants, and was ready and able to properly manage the fire equipment, and that, but for the failure, if any, of the water company to furnish a reasonable quantity or pressure of water, the fire could have been extinguished before the plaintiff's property was damaged, then they should find for the plaintiff.

In instruction No. 3 the court told the jury, in substance, that, if they believed from the evidence that the water company carelessly failed to bury or place its water mains a sufficient depth below the surface of the ground so that they would not be affected or injured by frost or freezing, or carelessly or negligently installed the hydrants in such manner that they were not self-draining, and that, by reason thereof, the hydrants or water mains at the time and place of the fire froze so that water would not flow through them; and should further believe from the evidence that the fire department was at the fire with necessary equipment to extinguish it, and that, but for the frozen condition of the mains or hydrants, if any, the water could not be thrown onto the fire to extinguish it, and that, by reason thereof, the plaintiff's building was destroyed by fire, then they should find for the plaintiff.

These instructions were based on facts as shown by proof and could not tend to confuse the minds of the jury, as contended by appellant. There was proof tending to show that, when the first fire occurred, there was no water in the mains, and before sufficient pressure was obtained the fire had gained such headway that the building adjoining the building of appellee was practically destroyed, and that if sufficient water had been available when the fire department first attached the hose to the hydrants, this fire could have easily been extinguished and the second fire thus prevented. The proof further discloses that, when the fire department responded to the second call, not only was the water frozen in the two hydrants which had been used a few hours before, but the water in the third hydrant, near enough to the fire to be used, was also frozen.

Appellant's chief complaint was on account of the refusal of the court to give an instruction offered by it which, in substance, would have told the jury that, if they believed from the evidence that because of the extremely cold weather and without fault on the part of defendant the hydrants were frozen at the time of the fire so that the water could not be turned on, such condition was the result of an act of God, and they should find for defendant. This instruction is, in effect, the converse of a portion of instruction No. 3, by which the jury were required to believe that the frozen condition of the mains or hydrants, if any, was due to the negli-

gence of the water company before they could find for the plaintiff. The appellant, therefore, was not prejudiced by the failure of the court to give the instruction requested.

Appellant finally complains of the admission of incompetent evidence. The evidence complained of was introduced by appellee as to the value of the building at the time of the fire. Some of the witnesses based their opinion as to its value upon what it would cost to replace it and without showing that they were familiar with the size or character of the construction of the building destroyed by the fire. There were witnesses, however, who were familiar with the building, who testified as to its value. The jury found its value at the time of the fire to be $8,000, which was the lowest estimate fixed by any witness. The appellant introduced no evidence as to its value and there was ample evidence to authorize the value fixed by the jury in its verdict.

Finding no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.