**COMMONWEALTH of Ky., DEPT. OF HIGHWAYS, Appellant,**

**v.**

**William H. WIDNER et al., Appellees.**

Court of Appeals of Kentucky.

March 26, 1965.

John B. Breckinridge, Atty. Gen., Wm. A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Phillip K. Wicker, Somerset, for appellant.

Logan E. Patterson, Patterson & Berger, Pineville, for appellees.

DAVIS, Commissioner.

The appellees instituted this action against the appellant, Commonwealth of Kentucky, Department of Highways, seeking to recover damages alleged to have occurred by reason of a landslide. The action is prosecuted as a so-called "reverse condemnation" suit. The jury awarded $5,-000 to appellees; the Department seeks to reverse the judgment, and presents these contentions: (1) The circuit court had no jurisdiction, as the asserted cause of action sounds in negligence, so that jurisdiction is exclusively vested in the Board of Claims; (2) incompetent evidence was admitted; (3) the court failed to instruct the jury concerning appellant's theory of defense; and (4) in event recovery is allowed, then a deed from appellees to appellant should be required.

The appellees acquired the subject property in 1952. It consisted of a lot on the slope of Log Mountain, on the east side of U. S. Highway 25–E, about two miles south of Pineville. Some years before appellees bought the property there had been a relocation of Highway 25–E; the old roadway formed the rear or east boundary of appellees' lot. There was a driveway leading from appellees' seven-room residence down to existing Highway 25–E. A masonry wall was located between the residence and the old road, and this stood about four feet behind the house.

In 1957 the appellant caused U. S. Highway 25–E to be widened as it passed in front of appellees' property. The 1957 project consisted of construction of a slow traffic lane on the west side of the highway, across the road from appellees' lot. According to evidence for appellees (sharply disputed by appellant), some of the earth and some large rocks were disturbed and removed from the east side of the highway incident to the 1957 construction. Appellees offered evidence (again denied by appellant) that on numerous occasions, after the 1957 construction, employees of the Highway Department had "cleaned out" the drainage ditch on the east side of the highway. It is contended by appellees that in so doing, the ditch was repeatedly deepened and widened, so as to remove lateral support from the sloping grade upon which appellees' residence was situated.

Evidence for appellees reflects that during the spring following the 1957 construction the bank in front of the residence began to show signs of slippage, and the bank has continued to slide ever since that time. In 1960 some locust trees on the slope in front of the residence began to lean toward the roadway, and large cracks began to appear in the surface of the soil. In late February, 1962, the sliding of the earth became so extended that appellees found it necessary to evacuate their residence. It is plain, from the evidence and photographs in the record, that a substantial landslide has occurred, and that the residence has been rendered uninhabitable in the present state of affairs.

There was evidence for appellees from qualified witnesses who expressed the view that the removal of rocks from the slope, coupled with digging away of earth at the toe of the slope (activities ascribed to appellant and denied by appellant) had so diminished the requisite lateral support as to ultimately precipitate and cause the landslide and its consequent damaging effect. Appellees testified that they saw appellant's employees, using appellant's equipment, removing rocks and earth from

the toe of the slope; furthermore, appellees professed to have made complaint to the appellant's employees as to this work, and claimed to have pointed out that such procedure was producing damage.

Appellant's witnesses flatly denied that any rocks or dirt had been disturbed on the appellees' (east) side of the road, either during the 1957 construction or in maintenance of the highway thereafter. For appellant it was shown that coal mining activities had been in progress (presumably during all of the pertinent period) within one thousand feet of appellees' property, and that this mining could have induced the landslide. Further expert testimony was presented in appellant's behalf that the residence was built on a thalus slope. It was explained that a thalus slope is one formed especially by an accumulation of rock debris at the foot or base of a cliff. Core tests made for appellant indicated that the thalus material was underlain with shale. It was explained that when surface cracks admit water through the thalus material onto the shale, the latter becomes as slippery as wet soap, and a condition occurs making a landslide very likely. There was evidence that rains in excess of an inch per day had fallen for the three or four days immediately preceding the last stages of the landslide. Countering this was evidence of many other heavier rainy seasons during several years prior to the slide; no ostensible damage followed the earlier heavy rains.

Appellees offered competent proof that the market value of their property before the slide was $7,500 to $8,000 and no more than $200 to $300 afterward. By instruction to the jury, the trial court limited the amount of recovery to $7,400; as noted, the jury awarded $5,000, and no complaint is made that the sum is excessive.

Appellant earnestly and ably argues that the circuit court had no jurisdiction. This contention is pitched on the theory that the cause of action necessarily sounds in negligence, and thus is one within the exclusive jurisdiction of the Board of Claims under KRS 44.070, et seq. The appellant confronts the matter in its brief by posing the issue: "The question is, can appellant ever in the maintenance or construction of its highway remove the lateral support of an adjacent owner except through negligence?" It is our view that the answer to that question must be in the affirmative. Indeed, we have substantially so held. See Com., Dept. of Highways v. Litteral, Ky., 319 S.W.2d 458, wherein the following discussion appears respecting removal of lateral support: "If the highway construction plans call for lowering the grade of the road, it is reasonably to be anticipated that there will be an interference with ingress and egress. But it is not reasonably to be foreseen that the lowering of the grade will remove lateral support. Whether lateral support will be removed may depend upon unknown geological conditions." op. cit., at p. 459.

In 38 Am.Jur., Negligence, § 24, p. 669, it is said: "Generally speaking, no one is bound to guard against or take measures to avert that which, under the circumstances, a reasonably prudent person would not anticipate as likely to happen." This is an enunciation of the accepted premise that foreseeability of harm is an important factor in determining whether any conduct is negligent. Cf. Long v. Louisville & N. R. Co., 128 Ky. 26, 107 S.W. 203, 32 Ky.Law Rep. 774, 13 L.R.A.,N.S., 1063, 16 Ann.Cas. 673; Mann v. Kentucky & I. Terminal R. Co., Ky., 290 S.W.2d 820; Union, Light, Heat & Power Co. v. Blackwell's Adm'r, Ky., 291 S.W.2d 539, 87 A.L.R.2d 264.

In City of Newport v. Rosing, Ky., 319 S.W.2d 852, we said of an action against a municipality for damages claimed as resulting from removal of lateral support: "Negligence is not the basis of recovery and the allegations of the complaint with respect thereto were surplusage." ibid., p. 854. We adhere to that view. We think it is apparent that lateral support could be removed willfully rather than negligently. In

any event, we do not perceive that the presence or absence of negligence is necessarily dispositive here.

Our cases which have approved the so-called "reverse condemnation" theory are premised on the constitutionally guaranteed "just compensation" for taking of private property. Ky.Constitution, §§ 13 and 242. The $10,000 limitation of recovery as prescribed by KRS Chapter 44 in negligence actions would offend the Constitution if construed as an effort to place a limitation upon the ultimate amount of "just compensation" as vouchsafed by the Constitution.

Appellant candidly recognizes that the decisions of this court which have allowed recovery in reverse condemnation cases foreclose its argument on this point, but ably urges that we should reconsider those decisions and recant from that position. In Curlin v. Ashby, Ky., 264 S.W.2d 671, this court did review, in part, the decisions involving the reverse condemnation theory; there some doubt was expressed as to the soundness of the doctrine. However, subsequent cases have recognized the principle and the court is not disposed to depart from it now, despite the able arguments presented here. It follows, therefore, that we find no merit in appellant's claim that the circuit court lacked jurisdiction.

The appellant insists that reversible error occurred when the trial court permitted "expert" witnesses to flatly state their opinions that the actions of the appellant caused the slide—as opposed to the contention that their answers should have merely responded that in their opinions the activities "could have" caused the slide. The argument is based on the principle that the answers as given invade the province of the jury. In support of this argument appellant relies upon Darlington v. Owen County RECC, Ky., 299 S.W.2d 599; Aetna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S.W. 523; and Madison Coal Corp. v. Altmire, 215 Ky. 283, 284 S.W. 1068. The authorities cited support the appellant's position. On the other side of the coin we note Harris v. Commonwealth, Ky., 342 S.W.2d 535; City of Harlan v. Eversole, 248 Ky. 131, 58 S.W.2d 371; and Nordmeyer v. Sanzone, 6 Cir., 314 F.2d 202, cited by the appellees. Additionally, appellees refer to Kelly Contracting Co. v. Robinson, Ky., 377 S.W.2d 892, wherein we treated as conjectural a doctor's testimony that "the disease *could* have progressed in such a manner that the work *would have been sufficient* to induce a fatal occlusion."

In Jackson v. Schine Lexington Corp., 305 Ky. 823, 205 S.W.2d 1013, this court quoted with approval from Wigmore on Evidence, 3rd Ed., wherein that learned author levels stern criticism at the "opinion rule." In Wigmore on Evidence, 3rd Ed., Vol. VII, § 1921, discussing the precise point at hand, it is said:

"Another erroneous test, prevalent in some regions, and nearly allied to the preceding one, if not merely another form of it, is that an opinion can never be received when it touches 'the very issue before the jury':

\* \* \* \* \* \*

"The fallacy of this doctrine is, of course, that it is both too narrow and too broad, measured by the principle. It is too broad, because, even when the very point in issue is to be spoken to, the jury should have help if it is needed. It is too narrow, because opinion may be inadmissible even when it deals with something other than the point in issue. Furthermore, the rule if carried out strictly and invariably would exclude the most necessary testimony. When all is said, it remains simply one of those impracticable and misconceived utterances which lack any justification in principle."

In 2 Jones on Evidence, 5th Ed., § 418, it is written:

"If it may be said that there still exists a general rule to the effect that a witness may not express his opinion

upon an ultimate issue of fact, it is obvious that the extensive relaxation of the rule turns it into what amounts to an expression by the courts of reluctance or reserve in the receipt of even expert opinion which would seem to substitute the witness for the jury or the judge in the final decision. On this basis what would seem to be confusion and conflict may be looked upon as reflecting a trend toward a common sense and not an arbitrary view. This common sense view is to receive the opinion testimony where it appears that the trier of the fact would be assisted rather than impeded in the solution of the ultimate problem."

■ We are persuaded that the principle is sound which rests on the "common sense" approach just mentioned. In the case at bar we believe that the jury's determination of the ultimate issue was necessarily assisted rather than impeded by the "expert" evidence, even though it was couched in language which technically invaded the jury's province as to the ultimate fact. Indeed, it would seem to be the essence of quibbling to say that it would have been proper for the witness to say: "In my opinion the slide was so caused" while holding it to be reversible error to allow the witness to say, "The slide was so caused." It was obvious to the jury that the witness, even in the latter instance, was yet expressing his *opinion,* since he was not at the scene when the slide occurred. Under these circumstances we must conclude that the contrary holdings of Darlington v. Owen County RECC, Ky., 299 S.W.2d 599; Aetna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S.W. 523; and Madison Coal Corp. v. Altmire, 215 Ky. 283, 284 S.W. 1068, are out of harmony with the present view, and to the extent of their conflict with the rule here approved, are overruled. See 78 A.L.R. 755, et seq. Accordingly, it is our view that no reversible error was committed in permitting the witnesses to express as fact their view that the slide was caused by the appellant's activities.

Appellant contends that the trial court failed to present its defense theory in an appropriate instruction. The claim is founded on the thesis that it was the appellant's theory that the slide was caused by an act of God; hence, appellant argues, reason and authority require that a specific instruction based on that theory should have been given. One was offered and refused. Cases such as Rogers v. Abbott, Ky., 240 S.W.2d 840, and others of similar import are cited by appellant to support the point. The cases so cited are sound, but are not applicable here.

■ In the present case the court instructed the jury, in pertinent part: "If the jury shall believe from the evidence that the plaintiffs' lot, upon which their house was located, was caused to slide or slip by the Kentucky Department of Highways by removing or weakening the lateral support for said lot in the course of maintaining or otherwise working upon the highway fronting the property, then you shall award the plaintiffs * * * damages * * *. Unless you so believe, you shall find for the defendant." Thus, the jury was required to find as an affirmative matter that the slide was caused by the activities of appellant before it could award a verdict against appellant. The converse clause, "unless you so believe, you shall find for the defendant," was sufficient to embrace any defense presented. The jury was permitted to include the *vis major* theory, or the coal mining theory, or any other theory in evidence as the causative element of the damage—the *only* basis upon which it could find for the appellees was to conclude that the Department's activities, defined in the instruction, had indeed caused the injury. This was sufficient and proper. See Shewmaker v. Richeson, Ky., 344 S.W.2d 802; Tente v. Jaglowicz, 241 Ky. 720, 44 S.W.2d 845; Louisville & N. R. Co. v. Rowland's Adm'r, 227 Ky. 841, 14 S.W.2d 174; Harlan Water Co. v. Carter, 220 Ky. 493, 295 S.W. 426.

Finally, and in the alternative, the appellant insists that if the judgment is to be affirmed as to liability, then it should be modified so as to require from appellees a deed. We cannot accept this argument. In the first place, the jury's award was not for the asserted value of the entire property, so that no basis exists for determination of what should be conveyed. Neither do we think there is merit in the suggestion that failure to require a deed will expose appellant to repeated claims for damages for the same injury. On the basis of the fact that these parties have litigated the issues presented it is our view that the subsequent recovery for the same injury is foreclosed. See Com., Dept. of Highways v. Cardinal Hill Nursery, Ky., 380 S.W.2d 249, 254; Bowling Green-Warren County Airport Board v. Long, Ky., 364 S.W.2d 167. Appellant's rights in the matter are afforded adequate protection by the *lis pendens* notice available through KRS 382.440, et seq.

The judgment is affirmed.