# Supreme Court of Kentucky

2021-SC-0339-MR

BYRON SEYMOUR                                          APPELLANT

           ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.                 HONORABLE MITCH PERRY, JUDGE
             NOS. 19-CR-000314 & 21-CR-000979

COMMONWEALTH OF KENTUCKY                    APPELLEE

## ORDER GRANTING PETITION FOR MODIFICATION

The Petition for Modification, filed by the Appellee, of the Opinion of the Court, rendered September 22, 2022, is GRANTED.

All sitting. All concur.

ENTERED: August 24, 2023

_____
CHIEF JUSTICE

# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: SEPTEMBER 22, 2022
MODIFIED: AUGUST 24, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0339-MR

BYRON SEYMOUR      APPELLANT

|  | ON APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| V. | HONORABLE MITCH PERRY, JUDGE |
|  | NOS. 19-CR-000314 & 21-CR-000979 |

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A circuit court jury convicted Byron Seymour of first-degree rape and being a second-degree persistent felony offender. Upon recommendation of the jury, the trial court sentenced Seymour to 20 years in prison. Seymour now appeals the resulting judgment as a matter of right,[1] alleging six errors. Finding none of Seymour's arguments meritorious, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

One morning, Seymour visited the home of T.J., an acquaintance of his. Seymour had previously visited T.J.'s home to visit Heather, T.J.'s daughter.

---

[1] Ky. Const. § 110(2)(b).

On this specific visit, T.J., Seymour, Heather, and Will, another friend of Heather's, were present. At some point, Will left T.J.'s home to purchase drinks for the group. Heather then went into the bathroom to take a shower, leaving Seymour alone with T.J.

Seymour entered one of the home's bedrooms and allegedly used a ruse to convince T.J. to enter the bedroom. Once T.J. entered the room, she claims Seymour closed the door and drew two knives on her. Seymour threatened her and told her not to say anything. Seymour unsuccessfully attempted to sexually assault T.J. at knifepoint. He then commanded T.J. to snort drugs on a table in the bedroom while he viewed pornography on his cell phone. He then sexually assaulted T.J. at knifepoint.

During the assault, Heather entered the bedroom and saw Seymour and T.J. engaged in intercourse. Heather yelled at Seymour to get off of T.J., and Heather and T.J. fled from the house. Once T.J. and Heather were outside, Seymour locked the door so they could not re-enter, and he exited the house by the back door.

While outside the house, T.J., who was partially naked, screamed for someone to call the police. An unknown neighbor or bystander called 911. When officers arrived on the scene, they took statements from T.J. and Heather and then transported T.J. to a hospital to undergo a sexual assault examination. Nurse Vickie Yazel, a sexual assault nurse examiner (SANE), performed the exam and collected DNA evidence.

Based on the statements provided to the officers by T.J. and Heather, police obtained a warrant to locate Seymour using his real-time cell site location information (CSLI). Once located, Seymour was taken into custody and interviewed. Seymour denied raping T.J. or having sex with her.

When the DNA samples collected from T.J. were examined, the DNA profile from the vaginal swab was consistent with a mixture of T.J.'s DNA and Seymour's DNA. Seymour was charged with first-degree rape, first-degree wanton endangerment, and being a second-degree persistent felony offender.

At trial, a jury convicted Seymour of first-degree rape and being a second-degree persistent felony offender. The jury recommended a sentence of 20 years in prison, and the trial court sentenced Seymour in accordance with the jury's recommendation.

## II. ANALYSIS

Seymour brings his appeal making several claims of alleged error. We address each alleged error in turn, providing additional facts as necessary.

### A. The trial court did not err in qualifying Nurse Yazel as an expert witness.

On appeal, Seymour argues that the trial court erred in qualifying Nurse Yazel as an expert witness. But this argument is unpreserved. So we review it only for palpable error, meaning that we will reverse the trial court's decision only if "[a] defect is so manifest, fundamental and unambiguous that it

3

threatens the integrity of the judicial process."[2]  In order to establish that a palpable error occurred, Seymour must show "the probability of a different result or error so fundamental as to threaten his entitlement to due process of law."[3]

"[A] trial court has wide latitude in deciding how to test an expert's reliability and in deciding whether or when special briefing or other proceedings, i.e., at a *Daubert* hearing, is needed to investigate reliability."[4] However, a *Daubert* hearing is not always required, so long as the trial court makes the decision to qualify an expert based on an adequate record.[5]

In this case, Seymour concedes that he did not make a pretrial motion to exclude Nurse Yazel as unqualified, nor did he request a *Daubert* hearing to challenge her credentials as an expert.  Further, Seymour does not identify any criteria that would make Nurse Yazel unqualified.  Thus, we uphold the trial court's qualification of Nurse Yazel as an expert so long as that decision was based on an adequate record.

At trial, Nurse Yazel testified about her qualifications: she earned her nursing degree in 2009, she completed SANE training in 2013, and she had eight years of experience as a SANE at University of Louisville Hospital, where

---

[2] *Huddleston v. Commonwealth*, 542 S.W.3d 237, 245 (Ky. 2018) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006)).

[3] *Brooks v. Commonwealth*, 217 S.W.3d 219, 225 (Ky. 2007) (internal citation omitted).

[4] *Dixon v. Commonwealth*, 149 S.W.3d 426, 430 (Ky. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

[5] *Luna v. Commonwealth*, 460 S.W.3d 851, 865 (Ky. 2015).

she had seen more than 1,000 patients and was the manager of the SANE program. We find Nurse Yazel's provision of her extensive qualifications to the trial court to be sufficient evidence on which the trial court could premise its decision to qualify her as an expert. Thus, we find the trial court's decision to qualify Nurse Yazel as an expert was not in error, palpable or otherwise.

**B. The trial court did not err in permitting Nurse Yazel to testify that, in her opinion, T.J.'s injuries were caused by forcible intercourse.**

Next, Seymour alleges that the trial court's admission of Nurse Yazel's testimony that T.J.'s injuries were caused by forcible penetration was improper because it was opinion testimony regarding the ultimate issue in the case. Seymour concedes that this issue is unpreserved, so we review it only for palpable error.

KRE[6] 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto[,]" so long as the testimony is based on sufficient facts or data, is the product of reliable principles and methods, and those principles and methods have been reliably applied to the facts of the case.

A witness presents an opinion on the "ultimate issue" in a criminal case when he or she opines as to the defendant's guilt with regard to the charged

---

[6] Kentucky Rule of Evidence.

offenses.[7]  Historically, such testimony as to the "ultimate issue" in a case has been prohibited.[8]  But in *Stringer v. Commonwealth*, this Court clarified that admissibility of statements regarding the "ultimate issue" in a case should be analyzed based on the testimony's ability to aid the factfinder "in the solution of the ultimate problem."[9]  The Court in *Stringer* outlined a four-part test for trial courts to consider in determining the admissibility of expert opinion testimony: 1) whether "the witness is qualified to render an opinion on the subject matter," 2) whether the subject matter of the testimony satisfies *Daubert*, 3) whether "the subject matter satisfies the test of relevancy set forth in KRE 401, subject to the balancing of probativeness against prejudice required by KRE 403," and 4) whether "the opinion will assist the trier of fact per KRE 702."[10]

Regarding the first element of the *Stringer* analysis, we concluded above in Part A that the trial court based its decision to qualify Nurse Yazel as an expert witness upon an adequate record detailing her experience and qualifications. As such, we find element one met.

Element two of the *Stringer* analysis concerns the sufficiency of an expert's testimony under *Daubert*. Because Seymour made no request for a *Daubert* hearing regarding Nurse Yazel's testimony or methodology, nor does he

---

[7] *Stringer v. Commonwealth*, 956 S.W.2d 883, 889 (Ky. 1997).

[8] *See Commonwealth, Dep't of Highways v. Widner*, 388 S.W.2d 583, 586–87 (Ky. 1965).

[9] 956 S.W.2d at 891–92.

[10] *Id.*

provide any argument in his brief alleging Nurse Yazel's testimony to be deficient under the *Daubert* standard, we find the second element of the *Stringer* analysis to be met.

The third element of the *Stringer* analysis requires the trial court to consider whether the evidence in question meets the threshold relevancy requirement outlined in KRE 401: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." This standard is "powerfully inclusionary and is met upon a showing of minimal probativeness."[11]

In this case, the jury was tasked with weighing the contravening testimonies of T.J. and Seymour and determining whether Seymour raped T.J. The fact that T.J.'s examination after the incident revealed injuries consistent with those a person would sustain from forcible intercourse is highly probative. The primary difference between T.J.'s and Seymour's testimonies was whether T.J. consented to the sexual encounter between them. Evidence that T.J. sustained injuries in the encounter of the nature usually caused by forcible intercourse is certainly helpful to the jury in determining which testimony to believe.

---

[11] *Roe v. Commonwealth*, 493 S.W.3d 814, 820 (Ky. 2015).

Even applying the KRE 403 balancing test[12] and weighing the evidence's probativeness against its prejudicial nature, we find that Nurse Yazel's conclusions drawn from her examination of T.J. are highly probative and not unfairly prejudicial to Seymour—her observations of T.J.'s injuries and opinions about the cause of those injuries simply supported T.J.'s narrative of the incident.

Lastly, the *Stringer* analysis requires the Court to consider whether the expert opinion testimony will assist the jury in determining a fact at issue in the cause. As described above, Nurse Yazel's opinion about the cause of T.J.'s injuries supports the narrative of the incident as described by T.J.—that she did not consent to the sexual encounter with Seymour. As such, Nurse Yazel's testimony was certainly useful to the jury in determining the factual question of the consensual nature of the interaction between Seymour and T.J.

In conclusion, we first clarify that Nurse Yazel's testimony did not necessarily go to the ultimate issue in this case—whether Seymour raped T.J. Instead, Nurse Yazel's testimony merely described T.J.'s injuries and opined about a possible cause of those injuries. But even when considered under the framework provided in *Stringer,* we find that Nurse Yazel's statement that T.J.'s injuries were caused by forcible intercourse was admissible. Any issue Seymour takes with the contents of Nurse Yazel's testimony, like other possible

---

[12] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

causes of T.J.'s injuries, could have been addressed in cross-examination. As such, the trial court did not err in allowing the jury to hear such testimony.

**C. The trial court did not err in allowing Nurse Yazel to testify about the statements made to her by T.J.**

When T.J. was undergoing a sexual assault examination by Nurse Yazel, she recounted to Yazel that her assailant had a knife, told her he would stab her, raped her, and tried to force her to use drugs. Before Nurse Yazel testified at trial, Seymour made a general objection to Yazel's testimony as inadmissible hearsay. The trial court ruled that the statements were admissible, and, as a compromise, the Commonwealth suggested it be permitted to lead the witness. All parties agreed with this suggestion as Nurse Yazel took the stand.

The Commonwealth contends that, in so agreeing, Seymour waived his objection to Nurse Yazel's testimony as inadmissible hearsay, and thus the issue is not subject to appellate review. But Seymour contends that his objection to Nurse Yazel's testimony and the trial court's ruling of admissibility were separate and distinct from the Commonwealth's suggestion that it be permitted to lead Nurse Yazel's testimony. So he argues that his objection regarding admissibility is preserved even though he acquiesced to the Commonwealth's leading Nurse Yazel's testimony.

The relevant exchange among the parties and the trial court went as follows:

> **Defense Counsel**: I'll admit, she got a few sentences in, but I don't see how this isn't hearsay. I don't see how this isn't an out-of-court statement used to prove what [T.J.] is saying happened.

9

**Commonwealth**: Your Honor, SANE nurses regularly get a medical history from the victim. She stated it prior to this question. She needs a history in order to treat and collect evidence. There is a portion of the statement, if [Defense Counsel] has an objection to the whole thing, there is a portion of the statement that is directly made for the purpose of medical treatment, which is an exception to the hearsay rule.

**Trial Court**: It is, and I'll allow this to pass. I don't know of any new case law that would say you couldn't do this.

**Commonwealth**: I'm sorry, I didn't hear that last part.

**Trial Court**: I've allowed this to pass. I don't know of any new case law that would say this is inappropriate.

**Commonwealth**: I don't either.

**Trial Court**: It's the medical history of why she is there. This is pretty descriptive, are you reading along with her?

**Commonwealth**: I am.

**Trial Court**: I mean, how long is it?

**Commonwealth**: It's relatively long. There is quite a lengthy paragraph.

**Trial Court**: My fear would be it gets turned into, effectively, a second statement of the prosecuting witness. So is there a way to shorten or summarize it?

**Commonwealth**: Absolutely, and if the court will allow me to lead her to where-

**Trial Court**: Yeah, do that.

**Commonwealth**: We'll do that.

An error is deemed waived when the failure to object is reflective of the party's "knowing relinquishment" of the right to object.[13] We cannot consider Defense Counsel's actions a "knowing relinquishment" of the right to object in

---

[13] *Tackett v. Commonwealth*, 445 S.W.3d 20, 28 (Ky. 2014).

10

this case.  First, Defense Counsel objected to the hearsay in Nurse Yazel's

testimony.  He made an objection and the trial court overruled the objection.

Next, Defense Counsel's approval of the Commonwealth's leading Nurse Yazel's

testimony was neither sought nor given.  In no way did Defense Counsel waive

or invite the alleged error in this case.  Rather, under RCr[14] 9.22, "when an

appropriate objection is made to a particular line of inquiry, it is sufficient to

preserve the issue for review as to that line of inquiry upon the grounds of the

objection previously made."[15]  As such, we conclude that Seymour's objection

to the hearsay in Nurse Yazel's testimony was properly preserved for our

review.

A trial court's decision to admit testimony is an evidentiary ruling we

review for abuse of discretion.[16]  We will conclude a trial court abused its

discretion only if we find its decision to be "arbitrary, unreasonable, unfair, or

unsupported by sound legal principles."[17]

At trial, the Commonwealth argued that the hearsay portions of Nurse

Yazel's testimony were admissible under the KRE 803(4) exception to the

hearsay rule for statements made for the purpose of medical treatment or

diagnosis.  And this exception provided the grounds on which the trial court

---

[14] Kentucky Rule of Criminal Procedure.

[15] *Rice v. Commonwealth*, No. 2004-SC-1076-MR, 2006 WL 436123 at *8 (Ky. Feb. 23, 2006) (citing *Osborne v. Commonwealth*, 867 S.W.2d 484, 491–92 (Ky. App. 1993)).

[16] *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007).

[17] *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

11

overruled Seymour's objection.  But the Commonwealth abandons this argument on appeal and instead presents new grounds on which the hearsay portions of Nurse Yazel's testimony were admissible. The Commonwealth now claims that the hearsay portions of Nurse Yazel's testimony were admissible as prior consistent statements made by T.J. While the only preserved argument is that Nurse Yazel's testimony was admissible as a statement made for the purpose of medical treatment or diagnosis, this Court is not precluded from reviewing the new justification raised by the Commonwealth. *Jarvis v. Commonwealth*, 960 S.W.2d 466, 469 (Ky. 1998). As this Court has previously held, an appellee may present alternative reasons justifying the decision of the trial judge and an appellate court may affirm a lower court ruling for any reason supported by the record. *Commonwealth v. Mitchell*, 610 S.W.3d 263, 271 (Ky. 2020). In the present case however, there is no need to review alternative justifications.

The determination of whether statements are excluded from the general prohibition on hearsay under the medical diagnosis and treatment exception "is governed by a two-part test: '(1) the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and, (2) the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis.'"[18]

---

[18] *Colvard v. Commonwealth*, 309 S.W.3d 239, 245 (Ky. 2010) (quoting *Willingham v. Crooke*, 412 F.3d 553, 561–62 (4th Cir. 2005) (internal citation omitted)).

Upon review of Nurse Yazel's testimony, led by the Commonwealth, we find that the hearsay contained therein is admissible as statements made for the purposes of medical treatment and diagnosis. Although a medical provider may not testify about all conversations with a patient,[19] the provider may testify about the patient's statements of the "type reasonably relied on by a physician in treatment or diagnosis . . . and ar[ising] from the declarant's purpose of promoting treatment."[20] The Commonwealth mischaracterizes this rule, stating that only T.J.'s statements Nurse Yazel *actually used* in treating T.J. are admissible. However, KRE 803(4) grants admissibility to those statements made for the purpose of obtaining treatment, so long as they are the type of statements that a physician would use for treatment or diagnosis. There is no requirement that the statements were determinative of the treatment or diagnosis provided, but only that they were pertinent for the patient to disclose under the circumstances.

We find T.J.'s three primary statements to Nurse Yazel—(1) she had been raped, (2) the assailant had held her at knifepoint, and (3) that the assailant had tried to force her to consume drugs—were statements made by T.J. for the purpose of obtaining medical treatment, and they were the type of information a medical provider would rely upon in treating a patient. These statements would alert a medical provider to the patient's potential consumption of or exposure to recreational drugs, potential knife wounds, and potential vaginal

---

[19] *Tackett*, 445 S.W.3d at 27.

[20] *Edmonds v. Commonwealth*, 433 S.W.3d 309, 315 (Ky. 2014).

13

trauma—factors which would inform the care provided to the patient. As such, we find the trial court did not abuse its discretion in concluding that the KRE 803(4) hearsay exception applied to Nurse Yazel's testimony concerning T.J.'s statements to her.

**D. The trial court did not err in admitting the 911 call into evidence.**

Before trial, Seymour objected to the Commonwealth's intended introduction of the 911 call into evidence. Seymour alleged that admission of the call into evidence violated his Sixth Amendment right to confrontation because he would be unable to examine the caller at trial. At trial, Seymour's objection was also based on the assertion that the 911 call was inadmissible hearsay. The trial court ruled that the evidence was admissible because it was not being offered for the truth of the matter asserted, and thus the call was not inadmissible hearsay. The trial court did not make a ruling about the Confrontation Clause issue.

On appeal, Seymour abandons his argument that the 911 call was inadmissible hearsay and instead only argues that the call should have been excluded to preserve his Sixth Amendment right to confront a witness against him.

"[T]he Confrontation Clause precludes admission of the statements of a witness unavailable to testify at trial if the witness' out-of-court statements were 'testimonial,' unless the accused had a prior opportunity to cross-examine

14

the witness."[21]  We review such constitutional errors under a harmless-error standard, meaning that we will affirm the lower court only if we find that any error committed is harmless beyond a reasonable doubt.[22]

As a threshold matter to addressing Seymour's argument, we must first determine whether the 911 call audio submitted into evidence is testimonial in nature such that Seymour's right to confrontation is implicated.  This Court has held that "statements that tell 'what is happening' are nontestimonial, while statements that tell 'what happened' are testimonial."[23] And we consider the perspective and intent of the speaker, rather than the listener, when determining whether a statement is testimonial.[24]

The 911 caller provided the following information to the 911 operator: "There's a lady outside naked saying a man broke into her apartment and raped her and she's screaming for me to call 911."  Further, the 911 caller stated that T.J.'s assailant had attacked her with a knife, and he was running "toward the YMCA behind the apartments."  Lastly, the caller relayed to the 911 operator that T.J. was requesting an ambulance.  The caller appeared to be primarily summoning aid for T.J., who was screaming and locked outside of

---

[21] *Hartsfield v. Commonwealth*, 277 S.W.3d 239, 242 (Ky. 2009) (citing *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)).

[22] *Nunn v. Commonwealth*, 461 S.W.3d 741, 750 (Ky. 2015) (internal citations omitted).

[23] *Rankins v. Commonwealth*, 237 S.W.3d 128, 131 (Ky. 2007) (quoting *Davis v. Washington*, 547 U.S. 813, 830 (2006)).

[24] *Fisher v. Commonwealth*, 620 S.W.3d 1, 6 (Ky. 2021) (internal citation omitted).

her home naked. While the caller did relay some of T.J. and Heather's statements about the details of the attack, like the assailant's use of a knife, her statements were primarily reports of what appeared to be an ongoing emergency.

We conclude that the 911 call did not constitute a testimonial statement and, thus, Seymour's right to confrontation was not implicated. So we affirm the decision of the trial court to admit the 911 call into evidence, but we do so on different grounds.[25] As such, the trial court did not err in allowing the 911 call to be admitted into evidence.

### E. The trial court did not err in allowing the jury access to a computer during deliberations.

During deliberations, the jury requested access to a computer so it could view evidence that was contained on a CD. The trial court obliged and provided the jury with a computer. The CD in question contained three exhibits: audio of the 911 call, silent body-camera footage from one of the officers who responded to the 911 call, and video footage of Seymour's interview with police. The jury did not specify which of these exhibits it intended to review. Seymour did not object to the trial court's grant of the jury's request for a computer on which to view the exhibits.

Seymour now alleges that the trial court erred in allowing the jury to have a computer because one of the exhibits on the CD was video footage of

---

[25] *Pace v. Commonwealth*, 529 S.W.3d 747, 758 (Ky. 2017) (citing *Kentucky Farm Bureau Mut. Ins. Co. v. Shelter Mut. Ins. Co.*, 326 S.W.3d 803, 805 n.3 (Ky. 2010)).

16

Seymour's interview with police—a testimonial witness statement. Because this argument is unpreserved, we review it only for palpable error.[26] Palpable error is that which creates "manifest injustice" or which is "shocking or jurisprudentially intolerable."[27] On review, we consider whether there is a substantial possibility that the outcome of the case would have been different but for the alleged error.[28]

RCr 9.72 provides that, "[u]pon retiring for deliberation the jury may take all papers and other things received as evidence in the case." This rule has been interpreted as granting the trial court discretion in determining those items of evidence a jury is permitting to bring into the jury room during deliberations.[29] But several categories of evidence have been designated as exceptions to this rule: "expert opinion letters or summaries, depositions, [and] recorded witness statements[.]"[30] Although these items may be admitted into evidence, they are not permitted to be taken into the jury room because "doing so would be akin to sending a witness back to the jury room."[31]

Seymour correctly states that testimonial witness statements are categorically prohibited from being brought to the jury room for review.[32] He

---

[26] Kentucky Rule of Criminal Procedure (RCr) 10.26.

[27] *Martin v. Commonwealth*, 207 S.W.3d 1, 3-4 (Ky. 2006).

[28] *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006).

[29] *Johnson v. Commonwealth*, 134 S.W.3d 563, 567 (Ky. 2004).

[30] *McAtee v. Commonwealth*, 413 S.W.3d 608, 620 (Ky. 2013).

[31] *Id.*

[32] *Id.* at 622.

17

also correctly identifies his recorded interview with police as a testimonial witness statement.[33] At the outset, we reaffirm this Court's longstanding rule that testimonial witness statements cannot be taken into the jury room. So the trial court erred in allowing the jury to take the CD containing the video of Seymour's interview with police into the jury room. However, Seymour fails to provide evidence that the testimonial witness statement was viewed by the jury in the jury room. In cases where improper evidence was taken into the jury room but was not actually viewed by the jury during deliberations, this Court has found that the "mere possibility" of improper evidence being viewed by the jury during deliberations cannot be said to have affected the substantial rights of the parties.[34]

Additionally, Seymour fails to show that, if the jury did view his testimonial witness statement in the jury room, a substantial probability exists that viewing this video changed the outcome of the jury's decision. The video of his interview with police had already been viewed by the jury as an exhibit during the trial, so even if the jury re-watched the video while deliberating, it was presented with no new evidence or testimony. So we find no substantial probability that the trial court's error in allowing the CD containing Seymour's interview with police to enter the jury room changed the outcome of the jury's decision, and we conclude that the trial court's allowing the CD into the jury room did not rise to the level of palpable error.

---

[33] *Id.* at 623.

[34] *See Commonwealth v. Wright*, 467 S.W.3d 238, 244 (Ky. 2015).

**F. The trial court did not err in failing to strike Juror No. 2615470 for cause.**

During voir dire, defense counsel asked prospective jurors if they had a personal experience or a friend or family member who had an experience with sexual assault. Juror No. 2615470 responded that his sister was involved in an unresolved sexual assault 30 years earlier. When asked by defense counsel whether it would be "hard to hear allegations and stories from witnesses" in this case, he said, "Somewhat." Defense counsel moved to strike Juror No. 2615470 for cause, and the trial court denied the motion. As a result, defense counsel used a peremptory strike to exclude Juror No. 2615470 from the jury pool.

We review a trial court's decision whether to strike a juror for cause under an abuse-of-discretion standard.[35] We will conclude a trial court abused its discretion only if we find its decision to be "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[36]

In determining whether to strike a potential juror for cause, the trial court "must weigh the probability of bias or prejudice based on the entirety of the juror's responses and demeanor."[37] Under RCr 9.36(1), a judge is required to excuse a prospective juror when there is reasonable ground to believe he or

---

[35] *Basham v. Commonwealth*, 455 S.W.3d 415, 420–21 (Ky. 2014) (internal citation omitted).

[36] *Goodyear*, 11 S.W.3d at 581.

[37] *McDaniel v. Commonwealth*, 341 S.W.3d 89, 92 (Ky. 2011) (citing *Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky. 2008)).

19

she cannot be impartial. Such impartiality may manifest itself as a general state of mind or through a direct response to questioning.[38]

Seymour argues that because Juror No. 2615470 said that it would be "somewhat" difficult for him to hear the testimony and allegations in this case, he lacked the ability to act as an impartial juror. We disagree. It would, no doubt, be difficult for anyone to hear testimony about an alleged violent rape. Juror No. 2615470's difficulty in hearing about the incident at issue in this case, without more, is not grounds for striking him for cause. This Court has held that the mere fact that a juror, or, in this case, a juror's sister, "has been the victim of a crime like the crime being tried does not by itself imply a disqualifying bias. Additional evidence of bias is required."[39] Several factors bearing on the existence of bias are "the similarity between the crimes, the length of time since the prospective juror's experience, and the degree of trauma the prospective juror suffered."[40]

Juror No. 2615470's statements that his sister was involved in an unresolved incident 30 years prior and that he was close to his sister are an insufficient basis from which to conclude that he could not participate as an impartial juror. Juror No. 2615470 did not say or imply that his prior experience would prevent him from acting impartially, and Seymour did not

---

[38] *See id.* (citing *United States v. Wood*, 299 U.S. 123 (1936); *Pennington v. Commonwealth*, 316 S.W.2d 221 (Ky. 1958)).

[39] *Ward v. Commonwealth*, 587 S.W.3d 312, 328 (Ky. 2019) (citing *Brown v. Commonwealth*, 313 S.W.3d 577, 598 (Ky. 2010) (internal citations omitted)).

[40] *Id.*

ask Juror No. 2615470 if his experience would affect his ability to act as an impartial juror. Based on this record, we cannot conclude that Juror No. 2615470 lacked the ability to act as an impartial juror. As such, we conclude that the trial court did not err in denying Seymour's motion to strike Juror No. 2615470 for cause.

### III.       CONCLUSION

Finding none of Seymour's assertions of error meritorious, we affirm the judgment of the Jefferson Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Joshua Michael Reho
Louisville Metro Public Defender's Office


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General